## SUPPORTING AFFIDAVIT

STATE OF OKLAHOMA )
) ss
COUNTY OF TULSA )

I, Daniel Jones, duly sworn, state the following:

1. Affiant is a federal law enforcement officer as defined under Rule 41(a)(2)(C) and is authorized to request this search warrant because Affiant is a government agent who is engaged in enforcing federal criminal laws and because Affiant is within the category of officers authorized by the Attorney General to request such a warrant. Affiant is a Special Agent with Homeland Security Investigations (HSI), a component of Immigration and Customs Enforcement (ICE), and has been so employed since June 2019. Affiant holds a Bachelor of Science in Criminal Justice from Northeastern State University and a Juris Doctorate from the University of Arkansas. Affiant is a graduate of the Federal Law Enforcement Training Center (FLETC), where Affiant completed the Criminal Investigator Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT). At FLETC, Affiant was trained in, amongst other things, investigating drug smuggling and other federal violations regarding the distribution of controlled substances. Additionally, Affiant has completed basic law enforcement training through Oklahoma's Council on Law Enforcement Education and Training (CLEET). Prior to joining HSI, Affiant worked as a full-time Deputy Sheriff in Adair County, Oklahoma. Moreover, Affiant is a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to

make arrests for, federal criminal offenses , including Title 21, United States Code, Section 841 – possession of methamphetamine with intent to distribute and Title 18, United States Code, Section 1512 – tampering with a witness, victim, or informant.

2. Affiant is cross-designated and has the authority to conduct Title 21 investigations and enforcement activities. Affiant has been involved with investigations for Title 21 offenses and is familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration and ICE.

3. During Affiant's law enforcement career, Affiant has received specialized training from various federal, state and local law enforcement agencies. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

4. The facts contained in this affidavit were discovered by me or related to me by other Law Enforcement Officers named herein.

**Property Sought For Forfeiture**

5. This affidavit is submitted in support of a civil complaint for forfeiture against $136,100 in United States currency and $139,950.00 in United States currency.

6. The asset listed above is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(6).

**Facts and Circumstances**

7. On April 6, 2023, Tulsa Airport Police requested that HSI respond to Tulsa International Airport. TSA had encountered two male subjects attempting to fly from Tulsa to Los Angeles, California, with bulk U.S. currency and marijuana. Agents from Oklahoma Bureau of Narcotics responded.

8. Once at the airport, the agents encountered Dontrell POWELL and Stevie LOGAN, Jr., at the offices of the Tulsa Airport Police at the Tulsa International Airport.

9. Agents showed POWELL their credentials and advised him of his Miranda rights and POWELL agreed to speak with the agents. POWELL told agents that he was traveling from Springfield, Missouri, to Los Angeles, California to purchase used cars. POWELL stated he had purchased his ticket four or five days previously. Agents asked POWELL if there was an emergency or other reasoning for his late and expensive ticket purchase and POWELL did not have an answer but again explained he was going to California to purchase multiple cars. Agents asked POWELL if he had a car dealership where he sold cars and POWELL indicated that he did not have a car dealership, but he was looking to buy one. POWELL went on to explain that he owned a "legit, real car selling business." This assertion seemed odd to agents as they had not questioned the legitimacy of his claims. Agents asked POWELL if he had a car dealer's license and POWELL told the agents that he had a business license and showed the agents the articles of incorporation for "Legendary Visions Co.", a limited liability company incorporated in Missouri.

10.     The affiant checked with the Missouri Department of Revenue and learned that POWELL does not have an auto dealer's license and reported that "Legendary Visions Co." was incorporated in October of 2022 but was inactive.

11.     Agents asked POWELL how many times he had made trips like this, and POWELL reported that this was the first time to purchase this many cars. According to POWELL, in previous trips, he had purchased three or four cars. POWELL also explained that he paid between $7,000 and $8,000 for used cars he picks up in California. Agents asked POWELL how many cars he had previously sold, and POWELL responded he could not remember but stated that in March he sold five or six cars, and this was an average amount for a month. Agents asked POWELL if there were any sellers in California that they could call to verify the information. POWELL initially said that there probably wasn't anyone the agents could contact to verify the information. POWELL then told agents that he goes through a third-party that puts him in touch with sellers. Agents asked POWELL who the third-party was and POWELL provided the name of "Oh So Sweet Mobile Detailing." Powell would not provide a phone number for "Oh So Sweet Mobile Detailing" and told agents that he does not talk to the subject associated with "Oh So Sweet Mobile Detailing" and only dealt with another third-party. Agents found this odd because POWELL had moments earlier told agents that "Oh So Sweet Mobile Detailing" was the third-party he would use for auto purchases.

12.     Your affiant located a phone number for "Oh So Sweet Mobile Detailing" and spoke with Travone Gayle. According to Gayle, he does not sell cars, nor does he broker auto sales. The affiant asked Gayle if he knew POWELL and Gayle responded that POWELL is a friend of a friend and that he put POWELL in touch with his brother-in-law's car dealership for a

three-vehicle purchase. Gayle reported that the deal took place on February 28, 2023. The affiant found this information odd as POWELL told agents in the April interview that he was headed to California to purchase three vehicles through "Oh So Sweet Mobile Detailing."

13. POWELL's California driver's license lists his address as 1600 E. McMillan Street, Compton, California. According to open-source information, the property is owned by Lheadry Powell. Lee Leon Powell is also associated with the 1600 E. McMillan Street address. California Secretary of State business records indicate Lee Leon Powell owns "My Black Pearl Associates", registered to the 1600 E. McMillan Street address. Business records state "My Black Pearl Associates" is a suspended business used to "facilitate medical marijuana transactions."

14. Agents advised LOGAN of his Miranda rights and he agreed to speak with the agents. Agents asked LOGAN why he was at the Tulsa International Airport and LOGAN told them he was catching a flight to LAX. Agents asked LOGAN where he was coming from and LOGAN told them he was coming from Parsons, Kansas. Agents asked how LOGAN got to the airport and LOGAN said he was dropped off. Agents later learned that LOGAN drove to the airport. With his consent, agents searched the vehicle parked at the airport. Nothing of evidentiary value was found in the vehicle.

15. LOGAN reported to the agents that he was on the way to California to buy cars for resale. LOGAN told agents that POWELL has a car lot named Legendary Visions located in Springfield, Missouri. However, POWELL had advised agents earlier that he did not have a car lot.

16. Agents asked what LOGAN's business was, and LOGAN reported that he does not have his own business and he operates under POWELL's business. Agents asked LOGAN why they (POWELL and LOGAN) would use cash instead of other payment methods and LOGAN told agents he did not know why they would use cash instead of other payment methods. Agents asked LOGAN where they were headed in California and LOGAN said they were going to LAX. Agents then asked where they were going after the airport and LOGAN told agents that he did not know where they were headed. Agents asked LOGAN why he did not know any of the specifics of the trip and LOGAN could not offer an explanation. Agents asked LOGAN if they had receipts from past car sales and LOGAN said that POWELL had all the receipts.

17. Agents asked if LOGAN had ever been in trouble and LOGAN reported that he was convicted of cocaine and pill possession and for intimidating an informant.

18. Your affiant contacted the Kansas Bureau of Investigations, who advised that LOGAN is a known drug dealer.

19. A criminal history query on POWELL and LOGAN revealed that both men had past felony drug convictions.

20. On April 6, 2023, a certified drug detection canine, Tyson, performed a free air sniff of the bags POWELL and LOGAN were carrying. The canine alerted on all four bags. In one of POWELL's bags, agents located 7 grams of marijuana. U.S. currency was located in all four bags.

21. The Defendant Currency was transported from the Tulsa International Airport to a Tulsa Bank of America branch. The currency seized from POWELL's luggage totaled $130,100. The currency seized from LOGAN's luggage totaled $139,950.

22. Based upon the information set forth herein, as well as training, experience, and knowledge of this investigation, Affiant has sufficient probable cause to believe that the $136,100 in United States currency and $139,950 in United States currency seized in this investigation is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(4) and (a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of 21 U.S.C. § 841; and is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

_____
DANIEL JONES, Special Agent
Department of Homeland Security

Subscribed and sworn to before me this 6th day of November, 2023.

_____
NOTARY PUBLIC, State of Oklahoma

(seal)   PAM KUCH
         NOTARY
         # 01011541
         EXP. 07/11/25
         PUBLIC
         STATE OF OKLAHOMA